**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANCES ANN GEARHEART,<br><br>              Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,[1] *Acting Commissioner of Social Security*,<br><br>              Defendant. | CIVIL ACTION NO. 3:16-CV-02128<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Frances Ann Gearheart's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is ordered that the Commissioner's decision be **VACATED** and this case **REMANDED** to conduct a new administrative hearing.

---

[1] While this action was pending, Nancy A. Berryhill replaced the originally named Defendant, Carolyn W. Colvin, as acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the case caption is amended to reflect the applicable party of interest.

## I. BACKGROUND AND PROCEDURAL HISTORY

On June 2, 2011, Plaintiff Frances Ann Gearheart ("Gearheart") protectively filed an application for Title II benefits. (Doc. 6-2, at 17). In her application, Gearheart claimed disability beginning January 1, 2010. (Doc. 6-2, at 17). The Social Security Administration initially denied Gearheart's claim on August 30, 2011. (Doc. 6-2, at 17). Gearheart filed a request for a hearing before an Administrative Law Judge ("ALJ") on October 24, 2011. (Doc. 6-2, at 17). The hearing was held on January 22, 2013, before ALJ Sharon Zanotto. (Doc. 6-2, at 17).

In a written opinion dated February 3, 2013, the ALJ determined that Gearheart was not disabled and therefore not entitled to the benefits sought. (Doc. 6-2, at 17). Gearheart appealed the decision of the ALJ to the Appeals Council, who remanded for reconsideration. (Doc. 6-2, at 17). The Appeals Council stated that "it was unclear why the claimant was limited to a range of light work based on the physical findings" and found further evaluation of the step five determination necessary due to misapplication of Rules 202.14 and 202.06. (Doc. 6-4, at 38-39). Summarized by the ALJ, the Appeals Council directed the ALJ to:

> obtain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence; if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's physical and mental impairments; further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c); give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and, if warranted, obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational

adjustment to other occupations under the guidelines in Social Security Ruling 82-41.

(Doc. 6-2, at 17).[2]

Following a rescheduling, the ALJ conducted a rehearing on November 7, 2014. (Doc. 6-2, at 17-18). On March 24, 2015, the ALJ issued a new opinion, again denying benefits, which forms the basis of Gearheart's current action. Gearheart appealed the decision on April 9, 2015. (Doc. 6-2, at 13). The Appeals Council denied Gearheart's request for review in a notice dated August 23, 2016. (Doc. 6-2, at 2). On October 21, 2016, Gearheart filed the instant action. (Doc. 1). The Commissioner responded on January 17, 2017, providing the requisite transcripts from the disability proceedings the same day. (Doc. 5; Doc. 6). The parties then filed their respective briefs (Doc. 9; Doc. 14), with Gearheart alleging two errors warranted reversal or remand. (Doc. 9, at 24). The Plaintiff did not file a reply to the Defendant's brief and the time for doing so has expired. On November 15, 2017, the Court received consent from all parties for the undersigned to enter a final judgment. (Doc. 18).

## II. THE ALJ'S DECISION

In a decision dated March 24, 2015, the ALJ determined Gearheart "has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2010, the alleged onset date, through December 31, 2014, the date last insured[.]" (Doc. 6-2, at 29). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Gearheart met the

---

[2] See Doc. 6-4, at 38-40.

insured status requirements of the Social Security Act through December 31, 2014. (Doc. 6-2, at 20).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined Gearheart "did not engaged in [SGA] during the period from her alleged onset date of January 1, 2010 through her date last insured of December 31, 2014[.]" (Doc. 6-2, at 20). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Gearheart has no severe impairments (Doc. 6-2, at 20). The ALJ found Gearheart has several medically determinable impairments including "Chronic Pain Syndrome secondarty to Abdominal Adhesions status-post Hysterectomy; Degenerative Joint Disease; Degenerative Disc Disease; Hypertension; Hyperlipidemia; Cellulitis; Chronic Obstructive

Pulmonary Disease (COPD); Obesity; Affective Disorder and Anxiety Related Disorder[.]" (Doc. 6-2, at 20).

Because the ALJ determined that Gearheart did not have any severe impairments, she did not proceed through the rest of the analysis.

## III. STANDARD OF REVIEW

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age,

education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S.

607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Gearheart is disabled, but whether the Commissioner's finding that Gearheart is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV. DISCUSSION

Gearheart asserts two points of error: the ALJ's finding that Gearheart suffers from no severe impairments and that the ALJ failed to properly evaluate and weigh the opinions contained within the record. (Doc. 9, at 24).

Per the Regulations in place on the date of the ALJ's decision, an impairment is not considered severe if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities "mean the abilities and aptitudes necessary to do most jobs." 20 CFR § 404.1521(b). The ALJ determined that none of Gearheart's impairments – chronic pain secondary to abdominal adhesions status-post hysterectomy; degenerative joint disease; degenerative disc disease; hypertension; hyperlipidemia; cellulitis; chronic obstructive pulmonary disease; obesity; affective disorder;

and anxiety related disorder – limited Gearheart's ability to perform basic work-related activities for 12 consecutive months. (Doc. 6-2, at 20). Gearheart argues primarily that the ALJ erred in finding Gearheart's affective disorder and anxiety-related disorders non-severe. (Doc. 9, at 26). Gearheart states that the ALJ's conclusion is specifically at odds with the opinions of three psychiatrists. (Doc. 9, at 26).

Gearheart first notes the opinion of state agency psychiatrist Dr. Elizabeth Hoffman, who reviewed Gearheart's records and offered an opinion on August 30, 2011. (Doc. 6-4, at 6-9). Dr. Hoffman characterized Gearheart's affective disorders as "severe." (Doc. 6-4, at 6). Dr. Hoffman determined that Gearheart had moderate restrictions in activities of daily living and in maintaining concentration, persistence, or pace, as well as mild difficulty maintaining social functioning and no episodes of decompensation. (Doc. 6-4, at 6). Dr. Hoffman stated that Gearheart's symptomatic complaints were only "partially credible." (Doc. 6-4, at 7). Dr. Hoffman opined that Gearheart was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, and respond appropriately to changes in the work setting, but did not find other significant limitations. (Doc. 6-4, at 7-8).

The ALJ determined that Dr. Hoffman's opinion overestimated the severity of Gearheart's limitations "and affords it limited weight only to the extent it is consistent with the findings" of the ALJ. (Doc. 6-2, at 26). The ALJ afforded significant weight to the portion of Dr. Hoffman's opinion "in that it suggests no extended episodes of decompensation." (Doc. 6-2, at 26). However, the ALJ found the opinion inconsistent with the record as a whole and the ALJ's own findings of a "significantly lesser degree of mental functional loss." (Doc. 6-2, at 26).

The next opinions discussed by the Plaintiff are those authored by Gearheart's treating therapist, Dr. Jared Young. (Doc. 9, at 27). Dr. Young began seeing Gearheart in January

2010, and filled out two impairment questionnaires contained in the record – dated May 25, 2012 and August 16, 2013. (Doc. 6-13, at 100-07; Doc. 6-14, at 95-102). In the first, Dr. Young stated that Gearheart was incapable of even low stress jobs and would miss more than three days or work per month. (Doc. 6-13, at 106-07). Dr. Young opined that Gearheart's anxiety, panic, and depression resulted in marked limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerance, working in coordination with or in proximity to others without being distracted by them, making simple work-related decisions, completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and traveling to unfamiliar places or using public transportation. (Doc. 6-13, at 103-05). Dr. Young further opined that Gearheart was moderately limited in her ability to understand and remember one or two step instructions, carry out simple one or two step instructions, sustain ordinary routine without supervision, interact appropriately with the general public, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently. (Doc. 6-13, at 103-05).

Dr. Young's second opinion reflects some manner of improvement on Gearheart's part. Dr. Young noted marked limitations in Gearheart's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, complete a

normal workweek without interruptions from psychologically based symptoms and perform at a
consistent pace without an unreasonable number and length of rest periods, and travel to
unfamiliar places or use public transportation. (Doc. 6-14, at 98-100). Dr. Young opined tha
Gearheart has moderate limitations in her ability to understand and remember one or two step
instructions, understand and remember detailed instructions, carry out detailed instructions,
maintain attention and concentration for extended periods, make simple work related decisions,
accept instructions and respond appropriately to criticism from supervisors, and set realistic
goals or make plans independently. (Doc. 6-14, at 98-100). Dr. Young reiterated his earlier
opinion that Gearheart would be incapable of even low stress work and would be absent more
than three days per month. (Doc. 6-14, at 101-02).

        The ALJ afforded these opinions "little weight[] for several reasons." (Doc. 6-2, at 26).
The ALJ identified the treatment records from Dr. Young as unsupportive of Dr. Young's own
findings. (Doc. 6-2, at 26). The ALJ specifically singled out a treatment note from May 2012,
where Dr. Young states that Gearheart was well-groomed, casually dressed, had a bright
demeanor and good eye contact, no suicidal or homicidal ideation, no symptoms indicative of
such issues, clear speech, and coherent thinking. (Doc. 6-2, at 26; Doc. 9-14, at 94). The ALJ
found these observations "suggestive of no significant objective functional loss." (Doc. 6-2, at
26-27). The May 2012 treatment note appears consistent with Dr. Young's entries over the prior
seven months. The ALJ also noted that Gearheart failed to produce evidence post-dating Dr.

Young's opinions that may have corroborated his opinion.[3] Lastly, the ALJ characterized Dr. Young's opinion as "quite inconsistent with the other mental health evidence of record, which strongly suggest stable, controlled mental health disorders with no objectively documented functional loss[.]" (Doc. 6-2, at 27). Acknowledging the treating source relationship, the ALJ nonetheless found the opinion an overestimate of Gearheart's limitations. (Doc. 6-2, at 27).

The final opinion referenced in both the Plaintiff's brief and the ALJ's decision is that of treating psychologist Dr. Ronald Sherman. On July 16, 2014, Dr. Sherman treated Gearheart for the first time and completed a mental impairment questionnaire the same day. (Doc. 6-15, at 14-20). Dr. Sherman opined that Gearheart "was totally disabled emotionally and unable to function in any job in any capacity." (Doc. 6-15, at 20). Dr. Sherman checked-off boxes reflecting his opinion that Gearheart had marked limitations with regard to understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule and consistently being punctual, sustaining ordinary routines without supervision, working in coordination with or near others without being distracted by them, making simple work-related decisions, completing a workday without interruptions from psychological symptoms, performing at a consistent pace without rest periods of unreasonable length or frequency, interacting appropriately with the public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them, maintaining

---

[3] Dr. Young states in the May 2012 treatment note that he "will be leaving" the practice and discussed alternative therapists with Gearheart during their session.

socially appropriate behavior, responding appropriately to workplace changes, being aware of hazards and taking appropriate precautions, traveling to unfamiliar places or using public transportation, setting realistic goals, and making plans independently. (Doc. 9-15, at 16). Additionally, Dr. Sherman opined that Gearheart had moderate limitations in remembering locations and work-like procedures, understanding and remembering one-to-two-step instructions, and carrying out simple one-to-two-step instructions, as well as "moderate-to-marked" restrictions in asking simple questions or requesting assistance and adhering to basic standards of neatness. (Doc. 9-15, at 16). In all, Dr. Sherman opined that Gearheart has at least moderate restrictions in every mental category, with a majority of her limitations being characterized as marked. (Doc. 9-15, at 16).

As with the opinions of Drs. Hoffman and Young, the ALJ afforded the opinion of Dr. Sherman little weight. (Doc. 6-2, at 27). The ALJ noted that Dr. Sherman authored his opinion the same day he met Gearheart, rather than basing the opinion on a lengthy treatment relationship. (Doc. 6-2, at 27). The ALJ also stated that "objective mental status examination findings were not markedly abnormal and there is no indication of outside review, strongly suggesting that the claimant's subjective reporting influenced or formed the primary basis of [Dr. Sherman's] opinion, further rendering it less persuasive." (Doc. 6-2, at 27). The ALJ found Dr. Sherman's opinion "to be an inconsistent, unsupported, subjectively based 'snapshot' overestimate of the severity of the claimant's impairments[.]" (Doc. 6-2, at 27).

The rationale for affording little weight to each opinion individually is defensible. The Regulations provide a list of factors to consider when affording weight to a particular medical opinion. *See* 20 C.F.R. § 404.1527. In discounting Dr. Hoffman's opinion, the ALJ states that the record as a whole is inconsistent with her opinion that Gearheart suffers from moderate

restrictions in both activities of daily living and in maintaining concentration, persistence, or pace. (Doc. 6-2, at 26). Consistency with the record as a whole is expressly mentioned in the evaluation standards. 20 C.F.R. § 404.1527(c)(4). Consistency is again cited as a basis for discounting treating source Dr. Young's opinions, which estimate even greater restrictions than Dr. Hoffman's opinion, along with supportability under § 404.1527(c)(3). (Doc. 6-2, at 26-27). The ALJ discounted Dr. Sherman's opinion because it was rendered on the first visit and appeared based on primarily subjective complaints, therefore not entitling the opinion to any level treating source deference, as well as the lack of supporting evidence. (Doc. 6-2, at 27). The ALJ stated that Gearheart's mental impairments are "non-severe" because they "cause no more than 'mild' limitation in any of the first three functional areas and no episodes of decompensation which have been of extended duration in the fourth area[.]"

Troublingly, however, is the lack of opinion evidence that remains to establish the severity of Gearheart's mental impairments, especially when considering the consistency that exists between all four opinions. Each medical expert opined that Gearheart's affective and anxiety disorders – impairments recognized by the ALJ – resulted in at least moderate restrictions in two of the four Paragraph B functional areas. The rationale for affording lesser weight to each opinion individually is not in error. But by affording little weight to each medical opinion, including one unquestioned treating source, the ALJ creates a vacuum in which the she inherently substituted her own opinion on the severity of Gearheart's mental impairments.

Had any medical source opined that Gearheart's mental impairments caused limitations in line with the ALJ's determination, this would not be the case. However, each medical source stated that Gearheart had at least moderate restrictions in particular areas of functioning that

contradicts the ALJ's conclusion that the mental impairments were non-severe because the impairments caused no more than mild limitations. The nearly unanimous conclusions of these medical professionals indicate limitations more than mild restrictions manifesting from Gearheart's mental impairments.

Gearheart's attribution of some limitation resulting from medication side effects is noted, but the Court finds the substitution of medical judgment on these grounds to be unpersuasive. No medical expert identified medication side effects as the cause of mental limitations, and there is no evidence with which to properly evaluate the extent medication side effects exacerbate or constitute the entirety of the cause for Gearheart's mental limitations as suggested by the ALJ. Gearheart states that her medication "makes it unsafe for [her] to drive" and "makes her sleepy and [sic] nap all the time." (Doc. 6-8, at 16-17). But these statements do not align with the wider dilution of restrictions found by the ALJ in comparison with those found by medical professionals. Thus, the Court is unconvinced by the ALJ's assertion that Gearheart "attributes [functional] difficulties primarily to pain and medication side effects, rather than to specific mental health symptoms." (Doc. 6-2, at 25). To the contrary, in the exhibit cited by the ALJ, Gearheart states that "[b]ecause of [her] anxiety and panic attacks [she] is unable to go out alone." (Doc. 6-8, at 16).

On the particular bases for affording lesser weight to the cited opinions, it is worth noting that the expertise of medical professionals is particularly important in cases of mental impairments. Mental impairments such as depression and anxiety, as diagnosed in Gearheart, may manifest in symptoms difficult to quantify through objective medical evidence. As noted by other Third Circuit courts, impairments such as depression and anxiety "while medically determinable, are difficult to substantiate by objective medical evidence." *Volage v. Astrue*, No.

11-CV-4413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012). "[T]he reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination" in circumstances involving impairments for which objective medical testing may not demonstrate the existence or severity of an impairment. *See Perl v. Barnhart*, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. March 10, 2005) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2002)).

Further, the Court notes that the general citations offered to support the ALJ's decision to discount Dr. Hoffman's opinion are inadequate. The stated factors are the same as those provided in § 404.1527. However, citation to an exceedingly large body of evidence without explaining why particular inconsistencies does not permit meaningful judicial review. The ALJ states that the record as a whole does not support the limitations found by Dr. Hoffman, but cites generally to Exhibits 10E-31F of the record; a block of medical records covering 537 pages without referencing any digestible portion. Without more particularized references, the Court cannot evaluate which portions of the records were considered, how they were evaluated, or why any portion thereof was given significant weight in reaching the conclusions found. *See Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).

## V. REMEDY

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). *See generally Fla. Power & Light*

*Co. v. Lorion*, 470 U.S. 729, 744 (1985) ( "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because that the ALJ erred in her rationale for finding Gearheart's mental impairments are non-severe, the Court finds that further development of the record is necessary, and the decision of the Commissioner is **VACATED** and the case **REMANDED**.

An appropriate Order follows.


**Dated: March 21, 2018**                                             *s/ Karoline Mehalchick*
                                                                     **KAROLINE MEHALCHICK**
                                                                     **United States Magistrate Judge**